IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TERRY LEE HALL,                    :
AIS #232589,                       :
    Plaintiff,                 :
                                   :
vs.                                :        CIVIL ACTION 14-438-CB-M
                                   :
WARDEN SMITH,                      :
    Defendant.                 :
                                   :

REPORT AND RECOMMENDATION

This § 1983 action, filed by Terry Lee Hall, an
Alabama prison inmate, proceeding *pro se,* was referred to
the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.2(c)(4), and is now before the Court on
Plaintiff's Complaint (Doc. 1), Defendants Warden Smith,
Officer Dubose, and Lieutenant Bailey's Answer and Special
Report (Doc. 17), which the Court has converted into a
Motion for Summary Judgment. (Doc. 18). Plaintiff did not
file a response to Defendants' Motion. After consideration
of these pleadings and Motion, and for the reasons set out
below, it is recommended that Defendants' Motion for
Summary Judgment be granted and that Plaintiff's action be
dismissed with prejudice.

I.   Facts and Proceedings

Plaintiff is an Alabama prison inmate serving time for
robbery first, rape second, and sodomy second. Plaintiff

is housed at Bibb Correctional Facility, but the events he complains of occurred at Fountain Correctional Facility when he was housed there.  As defendants, Plaintiff names Warden Shirley Smith (hereinafter "Defendant Smith"), Correctional Officer Amanuel Dubose (hereinafter "Defendant Dubose), and Lieutenant Larry Bailey (hereinafter "Defendant Bailey").  The Courts discerns the relevant facts as follows.

On May 13, 2014, Defendant Dubose and Defendant Bailey, along with several other officers, were instructed to execute random searches in Fountain's E-Dorm around 7:45 A.M.  (Doc. 17-3 at 1).  At 8:00 a.m., Dubose conducted a pat-down search of Plaintiff and found a cell phone in his front pants pocket.  (*Id.*).  Plaintiff was handcuffed and ordered to sit down on the bed and remove his shoes so they could be searched.  (*Id.*).  Plaintiff sat down, but refused to remove his shoes saying, "Man, Dubose, f*** that s***, you got everything.  A n**** ain't got s*** else."  (*Id.* at 2).  Plaintiff was ordered again to take his shoes off, but again refused.  (*Id.*).  Dubose attempted to take Plaintiff's shoes off himself, but Plaintiff tried to kick him.  (*Id.*).  In response, Dubose placed his hands on Plaintiff's chest and shoulders forcing him to lie flat on the bed while another officer removed Plaintiff's shoes and

searched them.  (*Id.*).  No other contraband was found on Plaintiff's person as a result of this search.

Plaintiff contends that Defendant Dubose hit, grabbed and choked him causing him injury and fear.  (Doc. 1 at 5). Plaintiff claims he sustained "neck injury, fear and anxiety and was not resisting, failing to obey an order, nor was he aggressive or a threat to security."  (*Id.*). Plaintiff also claims that Defendant Bailey should have but did not try to stop Dubose from hurting him, and allowed it to occur.  Plaintiff contends Defendant Smith knew Dubose to be "rogue and that he, on a regular basis, uses force unnecessarily and has hurt numerous inmates for minimal reason."  (*Id.*).

For relief, Plaintiff requests an "award [for] compensatory, punitive and nominal damages and grant an injunction protecting me from [] Dubose (i.e. transfer). (*Id.* at 8).  Since filing this action, Plaintiff was transferred to Bibb Correctional Facility; therefore, his request for injunctive relief via transfer is moot.

Defendants filed their Answer denying each and every material allegation contained in the Complaint, and raised multiple defenses, including, but not limited to, failure to state a claim upon which relief can be granted, immunity and waiver.  (Doc. 17 at 1-2).  Defendants filed their

Special Report which amply demonstrates their lack of liability for Plaintiff's alleged injuries.  Defendants set out that Plaintiff lacks the facts sufficient to demonstrate that the amount of force used inflicted unnecessary and wanton pain and suffering on Plaintiff, or that it was totally without penological justification. *Infra,* p. 8.  Defendants also notate the five *Whitley* factors that are utilized in determining whether force used was excessive: 1) need for application of force, 2) the relationship between the need and the amount of force used, 3) the threat reasonably perceived by the prison official, 4) any efforts made to temper the severity of a forceful response, and 5) the extent of injury suffered by the inmate.  Applying these factors to Plaintiff's allegations, Defendants contend that the force used on Plaintiff by Defendant Dubose was not excessive.

Regarding Plaintiff's claim of failure to protect against Defendant Bailey, Defendants correctly point out that where there is no constitutional violation of excessive force present, no violation for failure to protect can exist either. (Doc. 17 at 9). Defendants also address Plaintiff's claim of failure train and/or supervise against Defendant Smith.  (*Id.*). Defendants notate that Plaintiff does not allege that Smith

was present or in a position to prevent Dubose's alleged misuse of force, and that, without a personal level of involvement, she is not liable for any alleged use of force. (*Id.*). Defendants also state that Plaintiff's allegations against Smith are too vague to make her liable for any events that took place during the search. (*Id.*).

Lastly, Defendants thoroughly address the defense of immunity; however, the Court will not include or address immunity in its analysis since, based on the record and for the reasons set out below, it finds Defendants' Motion to be well taken.

## II.   Discussion

### a. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the

nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed.R.Civ.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

b. 42 U.S.C § 1983

As stated above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for the alleged "neck injury, fear and anxiety" he sustained due to Defendants' alleged use of excessive force when removing Plaintiff's shoes during a search.  (Doc. 1 at 5).  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1994).

c. Excessive Force

The language of the Eighth Amendment regarding "cruel and unusual punishment" manifests the general intention to prohibit the unnecessary and wanton infliction of pain without penological justification.  *Ort v. White,* 813 F.2d 318, 321 (11th Cir. 1987) (citations omitted).  However, the Supreme Court has noted that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, *Rhodes v. Chapman,* 452

U.S.337, 349 n. 14 (1981); therefore, courts should not freely substitute their judgment for that of officials who have chosen a course of discipline in an often dangerous and unruly environment.  *Ort* at 322 (*citing Whitley v. Albers,* 475 U.S. 312 (1986).

To establish a viable Eighth Amendment claim, the evidence must show that the measure taken inflicted unnecessary and wanton pain and suffering, or was totally without penological justification.  *Ort* at 322; *see also Rhodes,* 452 U.S. at 346. Unnecessary and wanton infliction of pain is distinguished from punishment and defined as an "immediate coercive measure undertaken by a prison official, necessitated by a spontaneous violation of a prison rule or regulation."  *Ort* at 322.  This situation dictates that prison officials undertake immediate action to end the violation without the luxury of hindsight and reflection.  *Id.*  The final determination "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Id.*  A higher standard with a more culpable intent requirement is applied where a plaintiff claims the use of excessive force.  *Flowers v. Bennett,* 135 F.Supp. 2d 1150, 1155 (N.D.Ala. 2000).  Thus, under *Whitley* and its progeny, a

plaintiff must prove that those who used force against him acted with malicious purpose, *see Johnson v. Breeden,* 280 F.3d 1308, 1321 (11th Cir. 2002), and that a requisite amount of force was used against him.  *Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992).  His evidence must go beyond a mere dispute over reasonableness of the force used and support a reliable inference of wantonness in the infliction of pain.  *Brown v. Smith,* 813 F.2d, 1187, 1188 (11th Cir. 1987).

In determining malicious purpose and whether the use of force was wanton or unnecessary, the *Whitley* Court established five factors to consider: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate.  475 U.S. at 321.

Plaintiff contends that Defendant Dubose's use of force in removing and searching his shoes was excessive causing him neck injuries and fear; however, the Court finds that Plaintiff fails to establish the existence of essential elements to his claim for excessive force, namely, malice and/or sadistic intent on the part of

Defendants, sufficient to withstand Defendants' evidentiary submissions, and which would allow a jury to return a verdict in his favor.  Other than Plaintiff's own version of the incident, he offers no evidence which tends to bolster his position.  As such, his allegations are conclusory and unsupported by the record, and therefore, cannot be taken as true.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a Plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). In the event it can be found that Plaintiff's allegations are not conclusory, the Court will engage in the five-factor *Whitley* test set out above.

Applying the five *Whitley* factors, it becomes clear that Plaintiff has failed to meet his burden in pleading his claim for excessive force against Defendant Dubose. First, the Court concludes that there was clearly a need for, at least, some force once Plaintiff wholly refused to comply with orders to remove his shoes, and attempted to kick Defendant Dubose.  Defendant Dubose placed his hand on

Plaintiff's chest and shoulder area forcing him to lie flat
on the mattress while another officer removed and searched
Plaintiff's shoes.  This was the only force used against
Plaintiff.  (Doc. 17-3 at 2).  The Eleventh Circuit has
long held that using force to compel compliance with a
valid order satisfies the first factor regarding a need for
an application of force.  *Brown,* 813 F.2d at 1189.

Second, as for the relationship between the need and
the amount of force used, it is clear that the amount of
force used did not exceed the amount necessary to subdue
Plaintiff.  In response to Plaintiff's resistance,
Defendant Dubose did not brutalize or unnecessarily injure
Plaintiff.  In fact, he used the least amount of force
possible to compel Plaintiff's compliance- pressing his
hand into Plaintiff's chest/shoulder area causing him to
lie flat on the bed as the shoe search was effected.
Again, there is no question that a physically rebelling
prisoner warrants a physical application of force in
response to his conduct.  To not respond with corresponding
force, a prison official would not be able to maintain
order to prevent harm to himself or to other prisoners.
Furthermore, the medical records documenting Plaintiff's
injuries demonstrate that the amount of force used was

proportionate to the need for force.[1]  Most importantly though, a disciplinary hearing was conducted regarding the incident and it was found by the hearing officer that Plaintiff was guilty of violating rule #925- failure to obey a direct order of an ADOC employee.   (Doc. 17-6 at 4-5).  Having used no more force than necessary, the second factor is satisfied.

Third, given that Plaintiff refused to comply with Dubose's orders, and then attempted to kick him, Defendant Dubose reasonably perceived Plaintiff as a threat.  It is well settled that "when an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials.  Such refusal and denial of authority places the staff and other inmates in danger."  *Helton v. Burks,* 2013 WL 6081764 (M.D. Ga. Nov. 19, 2013)(*citing Soto v. Dickey,* 744 F.2d 1260, 1267 (7th Cir. 1984). Further, the threat perceived by Defendant was fully realized when Plaintiff became assaultive toward Defendant Dubose.  The fact that

---

[1]  Plaintiff's body chart reflects the following observations by the nurse: "resp[iratory] unlabored, [complaining of] pain to throat, [no] redness to neck noted.  Redness to both wrist[s] from handcuffs, [no] bruises or cuts noted to body."  Photographic evidence of Plaintiff's shirtless body was also submitted indicating no visible injury to Plaintiff's neck, chest or shoulders. (Doc. 17-2 at 7-8).

Plaintiff initiated the threat, and was found guilty of the threat, confirms that Defendant Dubose was justified in perceiving Plaintiff as a threat, and in using the appropriate amount of force to subdue him.

Fourth, the Defendants' efforts to temper the severity of their force were sufficient, although minimal, since the amount of force used was likewise minimal.  Plaintiff was given the opportunity to comply with Dubose's orders more than once and could have avoided the altercation altogether if he had.  But, he chose not to, and caused the situation to escalate into the need for an application of force.  As soon as the shoe search was over, Defendant Dubose released Plaintiff from his grip and Plaintiff was escorted to the segregation shower area for holding until Plaintiff could receive a medical assessment.  (Doc. 17-3 at 2).  Again, as noted before, Plaintiff was assessed by a nurse and his body chart noted no abnormal conditions or injuries on Plaintiff's body as a result of the altercation.  (Doc. 17-2 at 7).  Furthermore, any injury, however small, was tempered by the care he received during his medical assessment once the altercation ended.

Fifth, and finally, Plaintiff's injuries were not severe.  Based on the submitted medical records, there is no indication that Plaintiff sustained any injury at all,

let alone severe injuries.  With no more than some redness on his wrists from the handcuffs, it is plain that the amount of force used was not excessive.  Accordingly, Plaintiff fails to establish the fifth and final factor necessary to prove excessive force.

In light of these five factors, it is apparent that Defendant Dubose did not act in a bad faith, malicious or sadistic fashion.  Moreover, Plaintiff's assertions are not substantially probative, but merely conclusory, and it is well settled that a conclusion cannot be taken as true. *Ashcroft,* 556 U.S. 662, 678-79; *see also Leigh,* 212 F.3d 1210, 1217 ("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman,* 739 F.2d 553, 556-57 (a Plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that his allegations do not support a reliable inference that a wanton infliction of pain was imposed by Defendant Dubose; thus, there is no dispute sufficient enough that a trier of fact could return a verdict in Plaintiff's favor.  S*tanfil v. Talton,* 851 F.Supp.2d 1346, 1371 (M.D. Ga. 2012)(*citing Whitley,* 475 U.S. at 322).

14

The Court cannot and does not condone physical force used against prisoners if designed for the purpose of causing "unnecessary and wanton infliction of pain." *Ort,* 813 F.2d at 321.  "The infliction of pain in the course of a prison security measure, [however], does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* at 323.  Bearing in mind all of the factors enumerated above, the Court finds that Defendant did not use excessive force on Plaintiff in an effort to wantonly inflict unnecessary pain, but merely enough force to maintain order in the prison, and over the unruly Plaintiff who purposefully created a hostile situation by attempting to kick Defendant Dubose. Accordingly, the force used by Defendant Dubose against Plaintiff was not excessive and Plaintiff's claim for excessive force fails as a matter of law.

### d. Failure to Protect

As to the allegations that Defendant Bailey failed to intervene or protect Plaintiff from Defendant Dubose's alleged excessive force, the Court finds that Plaintiff fails to demonstrate that a genuine dispute of material

facts exists wherein a reasonable jury could find in Plaintiff's favor.

The Eighth Amendment is only violated by a prison official's deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). "An officer who is present at the scene [of an altercation,] and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." *Jacoby,* 2014 WL 2435655, at *10 (*citing Hadley v. Gutierrez,* 526 F.3d 1324, 1330 (11th Cir. 2008). But, it must also be true that the non-intervening officer was in a position to intervene yet failed to do so. *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 924 (11th Cir. 2000). Thus, if excessive force is not used, the on-looking officer has no duty to intervene. *See Crenshaw v. Lister,* 556 F.3d 128, 1294 (11th Cir. 2009).

Prison guards are neither clairvoyant nor mind readers, and do not have the ability to know how another officer may react in any given situation. Even officers who are known to have a penchant for using excessive force cannot be predicted, and to hold an on-looking officer to that standard would be unreasonable. Giving an officer the discretion to maintain order, then crippling him with the

16

burden of predicting his fellow officers' actions, is counterintuitive to the purpose of penal institutions.  To conclude otherwise would potentially negate the punitive scheme behind an inmate's conviction and sentence.

Furthermore, it is well-settled that "not every malevolent touch by a prison guard gives rise to federal cause of action." *Hudson,* 503 U.S. 1, 9.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* at 9 (citations omitted). Therefore, the Court concludes that Defendant Bailey did not have a duty to intervene between Defendant Dubose and Plaintiff when Dubose held Plaintiff down on the bed to complete the shoe search. *Johnson v. Stanton,* 2014 WL 2569019, at *5-*6 (S.D.Ala. June 9, 2014).

e. Failure to Train and/or Supervise

It is well established in this Circuit that supervisory officials are not liable [] for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir. 2003)(citations omitted).  "The standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." *Id.*  To establish

supervisory liability in this Circuit, a plaintiff must show that either the supervisor personally participated in the alleged unconstitutional conduct or that there is a "causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003). To establish a causal connection, a plaintiff must plead facts that plausibly show a causal relationship in one of three ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, or (3) the facts support the inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Gonzalez* 325 F.3d at 1234-35 (citations omitted).

"While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how *overt acts* of the defendant caused a legal wrong." *Harris,* 2014 WL 4215576, at *4 (*citing Douglas v. Yates,* 535 F.3d 1316, 1322 (11th Cir. 2008)(citation omitted)(emphasis added). Because Plaintiff offers no proof causally connecting Defendant Smith to the

alleged wrongful acts of Defendants Dubose and Bailey, and because Plaintiff fails to show how Defendants directed them to act unlawfully, or knew that they would, Plaintiff's claims for supervisory liability lack minimal particularity and thus fail to allege a constitutional violation.  Furthermore, Plaintiff wholly fails to identify how they personally participated in Defendant Dubose's alleged use of excessive force.  Finally, the Court has stated above that Plaintiff has not set forth sufficient evidence for a finding of excessive force or that there was an injury, much less a severe injury.  Therefore, the Court concludes that Plaintiff's claims for supervisory liability are baseless, and no genuine issue of material fact exists which might lead a jury to find in his favor.

## III. Conclusion

Based on the forgoing, the Court concludes that Defendants Dubose, Bailey and Smith are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, and that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants, and against Plaintiff on all claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely

incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    DONE this 24th day of July, 2015.

                        s/BERT W. MILLING, JR.
                        UNITED STATES MAGISTRATE JUDGE